## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **13-00405-01-CR-W-GAF** |
| | ) | |
| **RASHAWN LONG** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MOTION TO DISMISS FOR LACK OF
## SUBJECT MATTER JURISDICTION

Defendant, Rashawn Long, moves to dismiss the indictment pursuant to Rule 12(b)(3)(b) of the Federal Rules of Criminal Procedure.

This motion is made on the following grounds:

1.       Defendant was charged and subsequently found guilty by a jury of illegally possessing 5.67 grams of 2-(Methylamino)-1-phenyl-1-butanone on October 26, 2013.  At the time of the alleged possession this substance or its positional isomers were not listed as Schedule I controlled substances.  Therefore, the substance did not fall within the definition of 18 U.S.C. § 802.

2.       The Court is without jurisdiction because the offense, if any, is cognizable only in the Western District of Missouri if the possession would have continued through March 7, 2014, or occurred after March 7, 2014, which it did not.  The offense, if any, occurred on October 26, 2013.

3.       The indictment does not state facts sufficient to constitute an offense against the United States of America.  As it pertains to the drug possession, the indictment reads:

1

"On or about **October 26, 2013** in the Western District of Missouri, and elsewhere, the defendant RASHAWN LONG, did knowingly and intentionally possess with the intent to distribute a mixture and substance containing a detectable amount of 2-(Methylamino)-1-phenly-1-butanone, a **Schedule I controlled substance** contrary to the provision of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C)."

4.     The statute is plain and concise about the activities that are prohibited.  § 841(a)(1) reads:

"(a) Unlawful acts.  Except as authorized by this title, it shall be unlawful for any person knowingly or intentionally –

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a **controlled substance**;"

5.     For the purposes of Title 21 U.S.C. § 841 the definition reads:

"(6) The term "**controlled substance**" means a drug or other substance, or immediate precursor, **included in schedule I, II, III, IV, or V of part B of this title [21 USCS § 812]**.  The term does not include distilled spirits, wine, malt beverages, or tobacco, as those terms are defined or used in subtitle E of the Internal Revenue Code of 1954 [26 USCS § 5001 et seq.]."

6.     This definition would require that this particular drug, substance, or immediate precursor be specifically listed as a Schedule I substance either by statute or regulation.  This is not the case at the time of the alleged possession.

7.     The substance was not specifically listed as a Schedule I controlled substance at the time of the allegations on October 26, 2013.  The compounds contained in this particular substance could have only been possibly covered by the Controlled Substance Act (CSA) as an

2

isomer. In particular, as an "optical isomer". This excludes the inclusion of position and geometric isomers.

8.      "Optical isomers, so termed because they rotate a beam of polarized light, are the **mirror image of each other**." *United States v. Ammar,* 714 F.2d 238 (1983).

9.      The definition's limitation of isomers to that of only the optical isomer creates a clear threshold for the government's burden of proof. By excluding other forms of isomers, such as geometric and position isomers, the list of possible substances is decreased to those with the exact same compounds and properties. Those compounds cannot be rearranged, otherwise they become position isomers.

10.     The statute and regulation has positional isomer defined as:

"(2) As used in § 1308.11(d) of this chapter, the term 'positional isomer' means any substance **possessing the same molecular formula *and* core structure *and* have the same functional group(s) and/or substituent(s)** as those found in the respective Schedule I hallucinogen, **attached at any position(s) on the core structure,** but in such manner that no new chemical functionalities are created and no existing chemical functionalities are destroyed relative to the respective Schedule I hallucinogen. Rearrangements of alkyl moieties within or between functional group(s) or substituent(s), or divisions or combinations of alkyl moieties, that do not create new chemical functionalities or destroy exiting chemical functionalities, are allowed i.e., result in compounds which are positional isomers. For purposes of this definition, the 'core structure' is the parent molecule that is the common basis for the class; for example, tryptamine, phenthylamine, or egoline. Examples of rearrangements resulting in creation and/or destruction of chemical functionalities (and therefore resulting in compounds which are not positional isomers) include, but are not limited to: Ethoxy to alpha-hydroxyethly, hydroxyl and methyl to methoxy, or the repositioning of a phenolic or alcoholic hydroxyl group to create a hydroxylamine. **Examples of rearrangement resulting in compounds which would be positional isomers include:** Tert –butyl to sec –butyl, methoxy and ethyl to isopropoxy, N, N-diethyl to N-methyl-N-propyl, or alpha-**methylamino** to N-**methylamino**."

11.     Unless specifically stated otherwise, the term "isomer" only refers to the "optical isomer" which is basically an exact copy of the compound's makeup with no chemical changes

or rearrangements.  Compounds and their respective isomers are routinely examined closely in patent cases.

"Isomer means:

(1) The optical isomer, **except as used in § 1308.11(d) and § 1308.12(b)(4)** of this chapter.  **As used in § 1308.11(d) of this chapter,** the term "isomer" means any optical, positional, or geometric isomer.  As used in § 1308.12(b)(4) of this chapter, the term "isomer" means any optical or geometric isomer;"

12.      There are several ways a substance or isomer(s) can be listed as a Schedule I controlled substance.  However, none of the substances or isomer(s) specifically listed the substance in question until March 7, 2014.

13.      This substance is not listed in the list of Schedule I controlled substances as detailed in Title 21 U.S.C. § 812.  It is, however, covered in the Code of Federal Regulations list of Schedule I controlled substances as a possible isomer because it has common compounds of other listed controlled substances.  This amended listing was made pursuant to Federal Register Vol. 76, No. 204 under the statutory authority of 21 U.S.C. § 811(h).  The amended list was not made effective until March 7, 2014.   Although notice of intent was likely made sooner, the law does not cover notices of intent.  The law only covers published regulations and rulings.  The published ruling and the subsequent amended regulations both occurred after the alleged possession.  "An agency that exercises its discretion to propose a rule has no duty to promulgate its proposal as a final rule.  Accordingly, **proposed regulations have no legal effect**." *United States v. Springer,* 354 F.3d 772 (2004).

The agency ruling reads in part:

"Section 201 of the CSA, 21 U.S.C. § 811, provides the Attorney General with the authority to temporarily place a substance into schedule I of the CSA **for**

4

**two years** without regard to the requirements of 21 U.S.C. § 811(b) if he finds that such action is necessary to avoid imminent hazard to public safety.  21 U.S.C. § 811(h).  In addition, if proceedings to control a substance are initiated under 21 U.S.C. § 811(a)(1), the Attorney General **may extend the temporary scheduling for up to one year.**  21 U.S.C. § 811(h)(2).

Where the necessary finding are, a substance may be temporarily scheduled **if it is not listed in any other schedule under section 202 of the CSA**, 21 U.S.C. § 812, or if there is no exemption or approval in effect for the substance under section 505 of the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 355.  21 U.S.C. § 811(h)(1); 21 CFR part 1308.  The Attorney General has delegated his authority under 21 U.S.C. § 811 to the Administrator of the DEA, who in turn has delegated her authority to the Deputy Administrated of the DEA.  28 CFR0.100, 0.104, Appendix to Subpart R of Part 0, Sec. 12."

14.    The clear language of the ruling and statute provide for **prospective** application of

the decision.  Emergency scheduling under § 811(h)(2) has no retrospective application by

statute and therefore has no retroactive authority.  The statute reads:

"(h) Temporary scheduling to avoid imminent hazards to public safety.

(1) If the Attorney General finds that the scheduling of a substance in schedule I on a temporary basis is necessary to avoid an imminent hazard to the public safety, he may, by order and without regard to the requirements of subsection (b) relating to the Secretary of Health and Human Services, schedule such substance in schedule I if the substance is not listed in any other schedule in section 202 [21 USCS § 812] or if no exemption or approval is in effect for the substance under section 505 of the Federal Food, Drug, and Cosmetic Act [21 USCS § 355].  Such an order may not be issued before the expiration of thirty days from—

(A) the date of the **publication by the Attorney General of a notice in the Federal Register** of the intention to issue such order and the grounds upon which such order is to be issued, and

(B)  the date the Attorney General has transmitted the notice required by paragraph (4).

(2) **The scheduling of a substance under this subsection shall expire at the end of two years from the date of the issuance of the order scheduling such substance, except that the Attorney General may, during the pendency of proceedings under subsection (a)(1) with respect to the substance, extend the temporary scheduling for up to 1 year.**

(3)  When issuing an order under paragraph (1), the Attorney General shall be required to consider, with respect to the finding of an imminent hazard to the public safety, only those factors set forth in paragraphs (4), (5), and (6) of subsection (c), including actual abuse, diversion from legitimate channels, and clandestine importation, manufacture, or distribution.

5

(4) The Attorney General shall transmit notice of an order proposed to be issued under paragraph (1) to the Secretary of Health and Human Services. In issuing an order under paragraph (1), the Attorney General shall take into consideration any comments submitted by the Secretary in response to a notice transmitted pursuant to this paragraph.

(5) An order issued under paragraph (1) with respect to a substance shall be vacated upon the conclusion of a subsequent rulemaking proceeding initiated under subsection (a) with respect to such substance.

(6) An order issued under paragraph (1) is not subject to judicial review."

15.     The Eighth Circuit requires an examination of the substance and its scheduling. "Where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, **there must be some meaningful review of the administrative proceeding**." *United States v. Springer*, 354 F.3d 772 (2004).

16.     Ex post facto clause bars the indictment and prosecution of the substance possession because the timing of the prosecution "changes the legal consequences of acts committed before the provision's effective date," and "it is the effect, not the form, of the law that determines whether it is ex post facto … therefore the change causes the precise effect the ex post facto clause is designated to guard against." *United States v. Bell*, 991 F.2d 1445 (1993).

17.     The scienter element of possession would require a defendant to knowingly possess the substance and know that it is in fact the compound listed in the indictment and not just similar to some other compound that is potentially covered in the CSA.

18.     If 2-methylamino is in fact an isomer it still does not fit the criteria for inclusion as a Schedule I controlled substance except under the term "positional isomer". As a standard isomer it is excluded from consideration except under compound stimulants. 2-methylamino is only included in any of the Schedule I stimulants as a positional isomer and is only barred as it pertains to the amended list of substances that went into effect on March 7, 2014.

6

19.     While it is not completely clear what comprehensive list of compounds constitute an isomer, it is clear that the substance in question does not meet the set of requirements to be considered a Schedule I controlled substance.

20.     The list of substances added to Schedule I that include 2-(**methylamino**) pursuant to § 1308.11(h) are Butylone, Pentedrone, 4-fluoro-N-methylcathinone, and 3-fluoro-N-methylcathinone.

Section 1308.11(h) reads:

"(h) Temporary listing of substances subject to emergency scheduling. Any material, compound, mixture or preparation which contains any quantity of the following substances:

…(22) Butylone, its **optical, positional, and geometric isomers,** salts and salts of isomers – 7541 (Other names: bk-MBDB; 1-(1,3-benzodioxol-5-yl)-2-(methylamino) butan-1-one)

(23) Pentedrone, **its optical, positional, and geometric isomers**, salts and salts of isomers –1246 (Other names: alpha-methylaminovalerophenone; 2-(methylamino)-1-phenylpentan-1-one)

(24) Pentylone, its optical, positional, and geometric isomers, salts and salts of isomers --7542 (Other names: bk-MBDP;   1-(1,3-benzodioxol-5-yl)-2-(methylamino) pentan-1-one)

(25) 4-fluoro-N-methylcathinone, its optical, positional, and geometric isomers, salts and salts of isomers –1238 (Other names: 4-FMC; flephedrone; 1-(4-flourophenyl)-2-(methylamino) propan-1-one)

(26) 3-fluoro-N-methylcathinone, its optical, positional, and geometric isomers, salts and salts of isomers – 1233 (Other names: 3-FMC; 1-(3-fluorophenyl)-2-(methylamino) propan-1-one).

## CONCLUSION

Positional isomers, such as 2-(methylamino), are only covered under the CSA under the provisions of 21 C.F.R. § 1308.11(d) and (h).  At the time of the alleged possession, 2-(methylamino) was not covered.  It did not become included until March 7, 2014 which was more than four months later.  That means that the substance alleged, does not fall within Federal jurisdiction as it pertains to this indictment.  It would only be covered if the agency's ruling were applied retrospectively, which is a violation of the Constitution's ex post facto clause and is

7

therefore, outside the statutory authority of the CSA. The prosecution is therefore barred. "The Supreme Court has established stringent limitations on the ability of agencies to establish retroactive regulations. In short, agencies cannot adopt such regulations unless that power is conveyed by Congress in express terms." *United States. DeLeon*, 330 F.3d 1033 (2003).

Therefore, the Defendant implores that this Court dismiss Count I of this indictment.


By  */s/ Patrick J. O'Connor*
Patrick J. O'Connor
Bar #78081
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 Telephone
(816) 531-2372 Facsimile

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically delivered on this 07 day of August, 2015 addressed to: U.S. Attorney's Office, Charles Evans Whittaker Courthouse, 400 East Ninth Street, Kansas City, MO 64106.

*/s/ Patrick J. O'Connor*